Good morning, your honors. May it please the court, my name is Rachel Mayer and I and Joanna Lee are student counsel for the plaintiff appellant, Mr. Lawrence Morris. We are joined by our supervising attorneys Gary Watt and Stephen Tallowfield. I plan to reserve two minutes for rebuttal. The district court erred when it dismissed Mr. Morris' complaint on a 12 v 6 motion because the complaint alleged a cognizable ex post facto violation and leave to amend for Mr. Morris' other claims would not be futile. At the time that Mr. Morris failed to report his income of $50 per week, he was only on notice that he would be subject to a temporary suspension of his FECA benefits and instead because of the retroactive application of section 8148, Mr. Morris is now being punished with a lifetime termination of benefits. I guess I read our cases as suggesting that if we can basically think of any non-punitive rationale for the, you know, for basically, I guess, what is this, 8148 is the statute we're talking about, then it's not considered punishment for purpose of the ex post facto clause. Can you address that point? Your Honor, the test is not whether there's any possible non-punitive purpose. The test is whether any reasonable non-punitive purpose can be assigned to the statute in light of the burdens imposed. And here the burden imposed by section 8148 is quite great. The statute applies to former civil servants who the government has found to be partially or fully disabled, and the burden imposed is removing all FECA benefits for the rest of the year. The burden is no doubt great. I can see that. I feel a lot of sympathy for your client here. But the standard, just as you articulated, is whether there's some non-punitive purpose that would be served, and I can, I think it's apparent from the record here that one obvious non-punitive purpose is we have discretionary power over the funds we're going to spend, and you know what? We'd just rather spend it on people who haven't defrauded us. And that's the rationale. It has nothing to do with trying to punish your client. We just want to spend the money somewhere else. Why isn't that a valid non-punitive purpose? Well, two points to Your Honor's concern. First, Congress absolutely has the right to determine where it wants to spend its government resources prospectively. But when there is also a punitive effect, it should not be applied retrospectively. Second. It's the question simply is there a punitive effect. I think everybody would agree when you take benefits away from individuals that they were accustomed to, even though not contractually entitled to, that it's punitive in some way. But isn't the question is whether there's some unmistakable evidence of punitive intent? Your Honor, there are two prongs to the test. It looks both to the effect and the intent. And here the only person to speak directly to Section 8148's purpose enunciated a punitive intent. He said that Section 8148 would enable Congress to punish those who defrauded the FECA program. And that is sufficient punitive intent to satisfy the third prong of the Supreme Court's test in selective service system versus Minnesota Public Research Interest Group. Is that the representative follow-up? Yes, Your Honor. Well, didn't he also – I mean, one, I have some grave concern about basing a decision on one representative statement. So I'm not sure we have any basis to do that. But he also basically went on to say the most important purpose of the bill was to save money. So it seems like a wash on his comments, doesn't it? Yes, Your Honor. The Mr. – Representative Fowle did state two purposes, the remedial purpose of saving taxpayer dollars as well as the punitive purpose of punishing people who defrauded FECA. However, if this Court finds ambiguity in the legislative record, it is fine not to rest its decision on just one comment by Representative Fowle. In light of such ambiguity, there are other factors that the Supreme Court has said are useful guideposts in the ex post facto analysis, as in the Kennedy v. Mendoza-Martinez factors. Isn't one of them just the location of the statute? I mean, this is not in Title 18. It's in Title 5. Isn't that an indication right there that Congress's intent wasn't to pile on criminal punishment? It's one indication, Your Honor, but it shouldn't be decisive for this Court. Here, Congress is adding punishment to something that was already punishable as a crime. Section 8148 adds additional punishment to what people who defrauded FECA should have received. Mr. Morris was punished under Section 1920, which was a criminal statute. He received a $250 fine and one year's probation.  Roberts, what about Smith v. Doe? That's the case involving the sex offender registration requirements. In some cases, lifetime, very burdensome requirements that were came into being after somebody had been convicted. I just – if that's okay and the Supreme Court has told us it is, I just don't see how your situation is going to be any different. Maybe you can address that point for me. Your Honor, Smith v. Doe should not be controlling because, as you pointed out, that was a sex offender registry case. And there, the overwhelming remedial purpose was public safety. And in light of that purpose, the burden imposed was reasonable. But here, the purpose of saving taxpayer dollars was already served by the scheme in place at the time Mr. Morris failed to report his income. Section 8106 and Section 8129 allowed the government to recoup the overpayments that it had made to Mr. Morris and allowed them to regain as a restitution or remedial way of getting the taxpayer dollars that they had overspent on Mr. Morris. Anything beyond that goes into the realm of punishment and should not be applied retroactively under the ex post facto clause. I guess you want us to part company with the Fifth Circuit and create a circuit split on the subject, basically. Why do you think the Fifth Circuit decision is not the correct decision? For several reasons, Your Honor. First, the Fifth Circuit did not adequately look at the burdens imposed by Section 8148. They simply looked that it was not part of the traditional form of punishment and failed to acknowledge that cases like Selective Service System and Nixon v. Administrator of General Services looks beyond just that first prong of the test. And in addition, they placed great weight on Representative Falwell's comments that the most important purpose was a tax-saving one. And as Your Honor pointed out, it might be difficult to just read the purpose of an entire statute into the comments, isolated comments of one legislator. So what this Court should look to is actually the effects and the fact that there is evidence of a punitive intent. And here the effects are punitive on Mr. Morris. Alito, did you say your client's real complaint would have been effective assistance of counsel? I mean, this statute was already on the books when he pleaded guilty. I assume he wasn't told about it by his lawyer, and I assume further that if he had been, he might well have made a different decision about whether to plead guilty. But as I read your brief, the replacement brief, I guess, you've abandoned any attempt to frame this as some kind of a habeas or rid of quorum novis type relief, right? You've just completely abandoned all of that? First, Your Honor, this is not a habeas corpus petition, because as the district court correctly noticed, the time for that has failed and Mr. Morris is not in Federal custody. This Mr. Morris has not enunciated any type of extraordinary claims such as a quorum novis seeking to overturn his conviction. However, he does enunciate other claims in his complaint. He says that there might have been a violation of due process, a violation of the So at the very least, this Court should remand for that reason alone, because they Let me ask you about the Rehabilitation Act claim, because I agree with you. I'm not certain that the amendment would be futile, but on the other hand, I will say that when your client was proceeding pro se, he never did articulate what exactly he would, what he would say in an amended complaint to get over the bar. So what is, what's the, how is he otherwise qualified to, to engage in this, this whatever job he was applying for? Yes, Your Honor. Well, with regards to the Rehabilitation Act claim, the government argues that it should be dismissed on statute of limitation grounds alone. And the, any untimeliness in this complaint should be, should be assigned to the government's unexplained 13-year delay. But Mr. Morris's Rehabilitation Act claim goes to the fact that he was found able enough to work and earn this income of $50 per week, yet the United States Postal Service refuses to reinstate him. And so he's caught in this catch-22 where, but you have a, is he qualified for the job? What job? Would he need some job at the Postal Service or other job? What is he, is there something in the record that would tell us he's qualified so we know he reasonably could amend? Your Honor, the record is silent on what job exactly he is seeking and what his qualification is. I recognize you didn't make the record. Yes. But that would be something that would be appropriate for Mr. Morris to have the opportunity to include in his complaint if it was remanded with leave to amend. And I see that my time is about to elapse. I would request some rebuttal time. We'll give you some rebuttal time. Thank you, Your Honors. Good morning. May it please the Court. My name is Carrie Brennan, and I represent the defendants' appellees in this matter. In this case, Pallant is asking this Court to restore his terminated workers' compensation benefits that were terminated pursuant to Section 8148. Now, normally decisions by the Secretary of Labor through the Office of Workers' compensation programs are not reviewable by the courts, and it's only when there is a valid, substantial constitutional claim that is alleged can a plaintiff get around that bar. And here, although it's close in the complaint, I think Mr. Morris, you know, barely alleges enough in the complaint, although it's very, very short on details. Can I ask you this? If Congress, I understand that Congress made the statute apply to acts that occurred before the effective date, but only to people who had been convicted after the effective date, right? I believe that's correct, Your Honor. Could Congress have made it retroactive to people who were convicted before the effective date? You know, I hadn't thought about it, but it doesn't seem like the analysis would be much different, actually. If it's not punishment, it's not punishment, and it would be somewhat like someone who was convicted and serving time in jail and had, and then the statute was passed terminating the Social Security benefits like the Supreme Court did. And the Congress has just said here you were convicted in, let's say, 1992. We come along in 1994 and pass this statute. And we say anyone who's ever in the history of the country been convicted of defrauding this program must refund to the taxpayers every penny of benefits they ever received. Well, refunding is different than what 8148 does. I understand. Okay. Okay. But why would that be different from an ex post facto standpoint? Well, I don't know that it would be different in an ex post facto claims analysis. So you think Congress could make you disgorge basically all of the money you would ever receive? I think it might be unconstitutional under an Eighth Amendment excessive fines cause analysis instead, but not, maybe not under an ex post facto. It's just restitution. You defrauded us and you got benefits and you owe us the money back. Give it back. Okay. Well, that's not restitution. What that is, is criminal forfeiture. And actually, that was the issue that the Weber court addressed, that the appellant cites in his brief. That case concentrated on the difference between restitution and forfeiture. And in that case, the Ms. Weber had defrauded the government to the tune of up to about $30,000, but when she was sentenced, the restitution order was in excess of $60,000. And the court of appeals said, no, you know, this isn't restitution. What this really is, is forfeiture, because restitution is making the victim whole. Forfeiture is the disgorgement of ill-gotten gains. And because the government only lost up to $30,000, the $60,000 award has to be something more than restitution. Now, the thing about Weber that's different from the situation here is that the forfeiture that the Court's talking about in Weber is not the forfeiture, the kind of forfeiture that we're talking about here. The forfeiture in Weber was something that Ms. Weber had, and then her ill-gotten gains she had to disgorge. Well, that's what I'm trying to get at. Is the line that you're asking us to draw, because I have to tell you, this seems mighty punitive, but is the line you're asking us to draw is if you just have an expectation, but not an entitlement to some future benefit, that can be taken away and it's not punishment, but somehow if you're forced to give back something that you already got, that that would constitute punishment? Is that the dividing line for ex post facto purposes you want us to draw? I don't know that it is, Your Honor. I don't think so. I think that there are several cases in which the courts have already ruled that, you know, giving up something, a noncontractual government benefit in the future is not punishment. And I would urge this Court to look at those cases and to look at the two cases that are directly on point, obviously, Garner and Slugaki. Those cases apply the three-prong test quite ably to 8148. Ginsburg-Murray You know, what bothers me partly about the statute is if, when you read the statute, it's really directed to a subclass of convicted individuals under Section 1920 or related type statutes. So it's almost like saying, okay, we got you once, now we got you twice. It's not just they're not saying, well, anybody who's been convicted shouldn't get money. They're basically saying you're convicted of something related to a false statement on benefits or a request for something from the government, and now you've been convicted and we're going to take away all the money. So why isn't that punitive? It's almost like a double whammy, and it would be different if the statutes weren't so telescoped here. Well, it is a harsh result, clearly, but that's the courts the courts tell us, the cases tell us that that's not the test for whether this is punishment. It goes back to the purpose that Congress had in enacting 8148, and that was to protect the integrity of the program. And when they passed the law, they said, look, you know, it was in the under the umbrella of passing an appropriations bill allocating money to different agencies, Department of Labor, Health and Human Services, Education, saying, look, we don't have a lot of money, okay, so what we're going to do is we are going to eliminate a class of people who have demonstrated that they're willing and able to defraud in order to suck money out of this system wrongfully, and therefore will protect the public fisc. But every time you take away money, you're saving money. So it's almost like the circular logic of, of course, our primary purpose here is to save money. Well, that's true. You take away benefits, you save money. But that – is that all you need to say to overcome this rather onerous reality of the statute, which is it really is punishing the person twice, isn't it? Well, I think that in Kurth Ranch and in other cases that the courts articulate the perspective from which we should look at this, and that is not the effect on the person, on the individual, because the individual is always going to feel it as punishment. I mean, it's an adverse consequence, right? The perspective that we look at it is from Congress's perspective. You know, what was the intent? What were they trying to do? So even though there may be some sort of, you know, punitive effect on the person or persons involved, the overarching purpose is still a remedial one, and that's the goal of saving money. And that's what the courts say. Kagan, you cited a slightly different one a minute ago that sounded more persuasive to me, which was more of a systemic, you know, you want the benefit system to run smoothly and not to be fraught with fraud, that sort of thing, which sounds like a more convincing theory to me. Where do we look to find this rationale, is all I'm wondering? Do you mean Congress's intent? Yes. You may look to the legislative history. It is recounted in our briefs. And Representative Fawell, I mean, even though – even Representative Fawell, even he, when he said, yes, you know, this will punish those who seek to defraud the system, then went on to say, and most importantly, it's going to save us money. So – and so there's really nothing in the legislative history that would indicate that Congress believed that this was some sort of method of punishment rather than allocating scarce resources in the most efficient and best manner for the American public. Could you, just in the minute you've got left, address the Rehabilitation Act claim? Why shouldn't we at least get to leave to amend? Sure. Okay. So the Rehabilitation Act, I mean, first of all, there – as you noted, there really is nothing in the record that would indicate that he was able to do any sort of job that the Postal Service could give him at that point. There is also an indication – a letter that indicates that he chose permanent disability, and that may have an effect on his ability to participate in a rehabilitation program. But more than that, he filed an EEOC charge or claim in 1997, and in 2002, the Office of Federal Operations sent him notice that that charge was being dismissed and that he had 90 days to file a claim, and he didn't do so. So even if the district court allowed him to come back and amend his complaint, it would still be barred by the statute of limitations. Thank you. Thank you.  First, to address Your Honor's concerns, this is punishing Mr. Morris twice. He was already duly punished under Section 1920, and he should have only had his benefits temporarily suspended. But instead, Congress should not be able to use any sort of circular logic to justify Section 8148's retroactive application. Here, saying that – Is it common sense saying, if you defraud me once, shame on you, but if you defraud me twice, shame on me, isn't Congress saying we're not going to give you a chance to do it the second time around? Certainly, canceling somebody's benefits permanently would not give them the second chance to defraud the government. However, the circular logic here – He did it once. You agree that he did it once, didn't you? Yes, Your Honor. This is not a challenge to his 1920 conviction. I know. All right. Go ahead. But the circular logic here that Congress is using is saying, oh, well, this is more of a taxpaying measure. However, that also increases its punitive effect. So it should not be allowed to say, just because the tax-saving benefit is increased, and ignore the fact that the punitive effect of Section 8148 is increased, because that's what the Constitution forbids. And second, to address your concerns about the Rehabilitation Act, any issues about the timeliness of his claim should be addressed on reneg, because it's not unclear that the claim is untimely on its face. And second – Why not if he – it sounds like whatever he was complaining about happened back in the late 90s. He did file the initial complaint at that time, Your Honor. However, he is seeking to be rehabilitated because he no longer has these benefits, which the government didn't cancel for his health insurance benefits until 2008. And the record does indicate from his 1920 conviction that he is capable of working as a handyman. So there might be many jobs he's capable of doing, such as working as a custodian or a handyman. The record just simply doesn't enunciate those. And without leave to amend, Mr. Morris has no opportunity to do so. Well, just why – why does the termination of the health benefits have any effect on when his claim accrued? His Rehabilitation Act claim, I mean. Your Honor, it might not, but he should be given the chance to argue it. And here for his Rehabilitation Act claim, he is seeking rehabilitation now because he no longer has these benefits. And in his eyes, that means that the government thinks he's able to work, and he is due that chance. Thank you, Your Honors. Thank you. The case just argued of Morris v. Burke is submitted. I note that this case is part of a court's pro bono project, and I appreciate counsel's argument today. I also appreciate UC Hastings and Mr. Watt and your continuing participation in the court's program. I also appreciate your argument, Ms. Brannon, and I'm sure you would agree that it's a little easier to respond to a well-written brief by counsel. We sometimes find it a little bit more difficult to respond to pro se briefs, not always, but often. So I also appreciate your professionalism and argument this morning. The case is submitted.
judges: Duffy, McKeown, Watford